IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JOHN G. ATWATER, M.D.,<br>    Plaintiff,<br><br>v.<br><br>MCLEAN COUNTY ORTHOPEDICS, LTD., an Illinois Corporation, JOSEPH A. NOVOTNY, M.D., CRAIG W. CARMICHAEL, M.D., MARK HANSON, M.D., JEROME W. OAKEY, M.D., JOSEPH B. NORRIS, M.D., and JOSEPH NEWCOMER, M.D.,<br>    Defendants. | Case No. 1:16-cv-01217-JEH |

**Order**

Before the Court is the Defendants' (collectively referred to herein as "MCO") 1) motion for summary judgment on Count II (D. 50)[1]; 2) motion for summary judgment on Counts I and II (D. 63); cross-motion for summary judgment on Counts I and II; and the Plaintiff's (referred to herein as "Atwater") motion for summary judgment on Counts I and II (D. 75).[2]

**I**

The undisputed facts demonstrate the following. Atwater was a physician, shareholder, and employee of MCO from October 1, 2001 to September 30, 2014,

---

[1] Citations to the Docket on CM/ECF are abbreviated as "(D. __ at ECF p. __)".
[2] The undersigned presides over this matter by consent of the parties. (D. 52 & 53).

when he ended his relationship with MCO. Atwater claims that MCO failed to pay him that to which he was entitled when he left MCO.

Atwater's employment relationship with MCO was governed by an Employment Agreement, which states in relevant part the following regarding severance:

> 10. **SEVERANCE PAYMENT:** Employee shall be entitled to receive an amount equal to the product of (a) multiplied by (b) wherein (a) is the amount of accounts receivable on the books of the Employee on the date of termination directly attributable to services rendered by Employee; and (b) is the Employer's collection percentage of total receivables billed for the preceding twelve months.

(D. 32-2 at ECF p. 5). The agreement also provides that it can only be changed by "an agreement in writing signed by the parties." *Id.*

The Employment Agreement makes no specific reference to revenue generated by mid-level professionals, which makes sense given that there were no mid-level professionals at MCO when the agreement was executed. Rather, after mid-level professionals began working at MCO, it developed an unwritten customary practice of allocating revenue[3] from services rendered by a physician's mid-level professional to the sponsoring physician *during that physician's employment*. Atwater claims that this "usual and customary practice" also applies to a physician's *severance payment*. Based upon this claim, he argues that MCO both breached its contract with him (Count I) and breached its fiduciary duty to him (Count II). MCO denies such a custom or practice existed *as it relates to severance,* although it acknowledges the same *during the employment relationship.*

The key to resolving the motions before the Court is the answer to this question:

---

[3] Various terms are used throughout the filings, but this Court uses the term "revenue" to generally refer to accounts receivable and income to physicians from mid-level professionals.

2

As it relates to *severance payments* and viewing the facts in the light most favorable to the moving party, is there a material factual dispute regarding whether MCO agreed to or had a custom and practice of allocating revenue from services rendered by a physician's mid-level professional to the sponsoring physician?

## II
### A

Summary judgment is appropriate if all evidence submitted shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.56(c); *Cox v. Acme Health Servs.*, 55 F.3d 1304, 1308 (7th Cir. 1995). In ruling on a summary judgment motion, the court is to examine all admissible facts, viewing the entirety of the record and accepting all facts and drawing all reasonable inferences in favor of the non-movant and construing any doubts against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970); *Trotter v. Anderson*, 417 F.2d 1191 (7th Cir. 1969). If the facts indicate that no reasonable jury could find for the party opposing the motion, then summary judgment must be granted. *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995).

To state a colorable breach of contract claim under Illinois law, a plaintiff must allege " '(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) the resultant damages.' " *Reger Dev., L.L.C. v. Nat'l City Bank,* 592 F.3d 759, 764 (7th Cir. 2010) (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.,* 351 Ill. App. 3d 752, 286 Ill. Dec. 734, 814 N.E.2d 960, 967 (2004)). In order to succeed on a claim of breach of fiduciary duty, a plaintiff must prove the existence of a duty, a breach of that duty,

and damages resulting therefrom. *See Alpha School Bus Co., Inc. v. Wagner*, 391 Ill. App. 3d 722, 747 (1st Dist. 2009).

### B[4]

Regarding the contractual claim, there is no material factual dispute regarding a lack of agreement regarding inclusion of revenue from mid-level professionals in a severance payment. As noted, *supra*, the written Employment Agreement is silent on the question. Moreover, as also noted *supra*, the Employment Agreement could only be changed in a written instrument signed by the parties. No such instrument was ever executed.

Even assuming the agreement could be modified orally, there is no evidence demonstrating any agreement at all concerning mid-level professionals and severance payments. Atwater points to no testimony anywhere in the record regarding an agreement as it relates to *severance*. Indeed, at best, he states that he *believed* mid-level professional revenue would be included in his severance. (D. 75-1 at ECF p. 9). His "belief" is not evidence of an agreement. Nowhere does Atwater ever state that he entered into an agreement with MCO or anyone else regarding receipt of severance pay which would include revenue from mid-level professionals. Without an agreement, there can be no contract. *Interstate Indus., Inc. v. Barclay Indus., Inc.*, 540 F.2d 868, 870 (7th Cir. 1976).

### C

Atwater also claims that a custom or practice of including revenue from mid-level professionals existed, such that MCO's failure to include them in his severance package constituted a breach of fiduciary duty. This claim too fails, for

---

[4] To the extent that Atwater also claims a right to revenue from ancillary services in his severance pay, there is absolutely no evidence to suggest that should be the case. The Employment Agreement does not provide for them in the section discussing severance payments, and Atwater's own deposition testimony demonstrates that no one ever received revenue from ancillary services in severance pay. Accordingly, there is no evidence of an agreement, custom, or practice in this regard. *See* (D. 65-2 at ECF pp. 1-2).

there is no evidence to suggest that a custom or practice existed as it relates to severance packages and revenue from mid-level professionals.

To be certain, it is undisputed that MCO did include revenue from mid-level professionals in physician compensation *while they worked* for MCO. Atwater attempts to bootstrap that custom and practice into a custom and practice related to *severance*. That attempt, however, fails for two reasons.

First, no one had ever severed their employment relationship with MCO where mid-level professional revenue was an issue; Atwater was the first. Accordingly, there was no practice *at all* regarding mid-level professional revenue and severance pay, for the circumstance had never arisen before. Some repetition is necessary before a custom and practice can develop. *See Kelly v. Carroll*, 223 Ill. App. 309, 314 (1st Dist. 1921) ("The existence of a custom or usage of this kind cannot be established by proof of one instance, but must be shown to have been followed in an accumulation of instances.").

Second, all the evidence suggests that MCO strictly construed the severance portion of the Employment Agreement. As already noted and as even Atwater testified, although physicians were compensated during their employment for ancillary services, every physician to have ever left the employ of MCO did *not* receive revenue from ancillary services as part of their severance pay. Accordingly, this practice precludes a reasonable inference that a custom and practice of MCO regarding revenue while a physician was employed with them carried over to the calculation of severance pay; indeed, the only reasonable inference is just the opposite. All the evidence in this case demonstrates that MCO calculated severance pay based upon the language of the Employment Agreement, and it accordingly limited revenue to that which was "directly attributable to services rendered by [the] Employee" and no one else. (D. 32-2 at ECF p. 5).

## III

Stated in the nutshell, after all the discovery in this case, Atwater cannot point to any agreement concerning his entitlement to anything other than that which is specifically provided for in the Employment Agreement regarding severance pay. It simply does not follow that MCO's methods of compensating physicians while they worked for MCO were identical to how they calculated severance pay. Indeed, the evidence supports only the opposite inference. Finally, there is no evidence of a custom or practice of doing so either, as the issue had never arisen prior to Atwater's separation from MCO. The most that Atwater can point to in support of his claims is his own "belief" that his severance would include revenue from mid-level professionals. That is not enough to survive summary judgment. Accordingly, MCO could not breach an agreement into which it never entered and it could not breach a fiduciary duty that did not exist.

For the reasons stated, *supra*, MCO's motion for summary judgment on Count II (D. 50) is GRANTED; motion for summary judgment on Counts I and II (D. 63) is MOOT; and Atwater's motion for summary judgment on Counts I and II (D. 75) is DENIED.

The only claim remaining in this case is MCO's counterclaim (D. 76).

*It is so ordered.*

Entered: August 21, 2018

<u>s/Jonathan E. Hawley</u>
U.S. Magistrate Judge